PEOPLE v SCHMITZ

Docket No. 200485. Submitted July 1, 1998, at Detroit. Decided September 11, 1998, at 9:05 A.M. Leave to appeal denied, 459 Mich ___.

Jonathan T. Schmitz was convicted by a jury in the Oakland Circuit Court, Francis X. O'Brien, J., of second-degree murder and possession of a firearm during the commission of a felony. He was sentenced to consecutive sentences of twenty-five to fifty years for the murder conviction and two years for the felony-firearm conviction. The defendant appealed.

The Court of Appeals *held*:

1. The defendant preserved his challenge to the court's method of permitting the exercise of peremptory challenges.

2. The trial court erred in equating the defendant's pass of the panel of potential jurors on the second day of jury selection as an acceptance of each venireman thereon when the defendant subsequently sought to exercise a peremptory challenge to remove a venireman that had been on the panel when the defendant previously passed for peremptory challenges. Where, as here, a party passes a panel and the composition of the panel subsequently changes, either by challenges for cause or by the exercise of peremptory challenge by another party, the party that earlier passed is free to exercise any remaining peremptory challenges to remove any member of the new panel. It is not until both parties pass for peremptory challenges and there has been no change in the makeup of the panel that a party's pass may be deemed conclusive. The defendant did not waive his objection to the jury selection process by not exercising his remaining peremptory challenges for veniremen other than the one he wished to remove.

3. The Court of Appeals cannot find the trial court's error harmless. Resultant prejudice from errors surrounding the selection of juries is virtually impossible to demonstrate. The convictions must be reversed and the matter must be remanded for a new trial.

4. The prosecution's rebuttal argument contained an improper civic duty argument.

5. The court did not err in admitting into evidence black and white photographs of the crime scene and the victim's entrance wounds and a tape recording of a 911 telephone call by an eyewit-

ness. The court did not abuse its discretion in allowing the medical examiner to use a white plaster mannequin to demonstrate the various wounds of the victim.

Reversed and remanded.

1. JURY — PEREMPTORY CHALLENGES — ACCEPTANCE OF JURY.

It is not until both parties pass for peremptory challenges and there has been no change in the makeup of the panel of veniremen selected to be jurors that a party's pass may be deemed conclusive; after a party passes a panel and the composition of the panel subsequently changes, either by challenges for cause or by the exercise of peremptory challenges by the other party, the party that earlier passed may exercise any remaining peremptory challenges to remove any member of the new panel (MCR 2.511).

2. TRIAL — JURY — PEREMPTORY CHALLENGES.

Prejudice resulting from errors surrounding the selection of juries is virtually impossible to demonstrate; harmless-error analysis is not appropriate with regard to errors surrounding the selection of juries, such as errors affecting peremptory challenges; error requiring reversal results from the failure to honor the statutory right of peremptory challenge.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Robert C. Williams*, Acting Chief, Appellate Division, and *Anica Letica*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for the defendant on appeal.

Before: MARKEY, P.J., and SAWYER and NEFF, JJ.

PER CURIAM. Defendant appeals as of right his convictions by a jury of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to consecutive sentences of two years for the felony-firearm conviction and twenty-five to fifty years for the sec-

ond-degree murder conviction. We reluctantly reverse
and remand for a new trial.

I

This case arises from defendant's killing of Scott
Amedure with a shotgun on March 9, 1995. Three
days before the shooting, defendant appeared with
Amedure and Donna Riley in Chicago for a taping of
an episode of the Jenny Jones talk show, during
which defendant was surprised by Amedure's revela-
tion that he had a secret crush on him. After the tap-
ing, defendant told many friends and acquaintances
that he was quite embarrassed and humiliated by the
experience and began a drinking binge.

On the morning of the shooting, defendant found a
sexually suggestive note from Amedure on his front
door. Defendant then drove to a local bank, withdrew
money from his savings account, and purchased a 12-
gauge pump-action shotgun and some ammunition.
Defendant then drove to Amedure's trailer, where he
confronted Amedure about the note. When Amedure
just smiled at him, defendant walked out of the
trailer, stating that he had to shut off his car. Instead,
defendant retrieved the shotgun and returned to the
trailer. Standing at the front door, defendant fired two
shots into Amedure's chest, leaving him with no
chance for survival. Defendant left the scene and tele-
phoned 911 to confess to the shooting.

The defense theory was primarily that of dimin-
ished capacity. The defense argued that defendant,
who already had a badly damaged psyche, was
ambushed by the Jenny Jones show, betrayed by
Amedure and Riley, and unrelentingly stalked by
Amedure. The defense further argued that defendant

did not have sufficient mental capacity to form any intent, general or specific, because he was suffering from recurrent bipolar or unipolar depressive disorder and from the psychological consequences of untreated Graves' disease.

Defendant was charged with first-degree murder and felony-firearm. However, the jury returned a verdict finding defendant guilty of the lesser offense of second-degree murder.

II

Defendant argues that the trial court erred in refusing to allow him to exercise a peremptory challenge against a venireman he had previously "passed." On the basis of the current state of the law that we are constrained to follow, we agree, and further hold that under current controlling case law this error cannot be deemed harmless and thus requires reversal of defendant's convictions.

A

Jury selection in this case took more than three days to complete and was filled with probing questions regarding highly personal matters such as mental illness, homosexuality, past embarrassing moments, and betrayal by others. The array completed individual questionnaires before the start of voir dire, and many potential jurors were dismissed for cause on the basis of their answers to the questionnaires.

Pursuant to MCR 6.412(E)(1), each side was allotted twelve peremptory challenges. On the final day of jury selection, the defense sought to peremptorily challenge a venireman that had been on the panel

when the defense passed for peremptory challenges on the second day of jury selection. The prosecutor objected and stated that defendant should be deemed to have accepted the venireman and that defendant's request to later peremptorily challenge the venireman should be denied. The trial court denied defendant's request to exercise a peremptory challenge to the venireman and noted that the court's routine interpretation of the court rule was that by passing the panel defendant could not "open up the preemptory [sic] challenges again." The court continued:

> Both having waived any further preemptory [sic] challenges by their indications to the Court, the Court would indicate that we have a Jury now that will be the Jury to sit on this case.

Defense counsel did not challenge the court's statement that defendant had waived his remaining peremptory challenges, and turned his attention to how to minimize the potential prejudice of the jury resulting from the unsuccessful attempt to challenge one of the venireman. With the court's permission, defense counsel was permitted to withdraw the challenge in the presence of the veniremen.

B

On appeal, defendant argues that reversal of his convictions is required because the trial court denied him the opportunity to exercise a peremptory challenge in accordance with the court rules. Before reaching the merits of this argument, we must first address the prosecution's assertion that this issue has not been properly preserved for our consideration.

Where a party fails to object to the method of jury selection at trial, he has waived the issue on appeal. See *People v Lawless*, 136 Mich App 628, 636; 357 NW2d 724 (1984); *People v Goode*, 78 Mich App 781, 789; 261 NW2d 47 (1977). Moreover, a party's claim that the jury selection process was defective generally is not preserved if the party fails to use all available peremptory challenges. *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992). A party may also preserve a challenge to the jury selection process by refusing to express satisfaction with the jury. *Id.*

In *People v Russell*, 182 Mich App 314; 451 NW2d 625 (1990), rev'd 434 Mich 922; 456 NW2d 83 (1990), this Court reversed the defendant's conviction of first-degree criminal sexual conduct because of a defective jury selection process.[1] This Court held, over Judge SAWYER's dissent, that the trial court's procedure was a clear violation of the court rule, and that the defendant's failure to exercise all his peremptory challenges did not preclude reversal. 182 Mich App 319-320.

Dissenting, Judge SAWYER agreed that the trial court's methods at the beginning of jury selection were improper, and that the defendant effectively objected to the erroneous procedure. However, he concluded that reversal should not be required for

---

[1] In *Russell*, the trial court asked, but did not require, the parties to excuse up to three veniremen at a time in order to speed up the selection process. Neither party objected to this procedure. When jury selection did not occur as fast as the court desired, the court announced that if the parties did not exercise three peremptory challenges, it would be treated as a pass, and that any pass would not be construed as an acceptance until both counsel had passed. Jury selection soon ended, with defendant exercising sixteen of his allotted twenty peremptory challenges and expressing his satisfaction with the makeup of the jury.

two reasons. First, the trial court changed the proce-
dure early enough in the process to correct the error,
and second, the defendant failed to use four of the
twenty peremptory challenges he was allotted and
expressed his satisfaction with the jury. *Id.* at 324-326
(SAWYER, J. dissenting). Our Supreme Court perempto-
rily reversed the judgment of this Court and rein-
stated the judgments of the circuit court for the rea-
sons stated in Judge SAWYER's dissent. 434 Mich 922.

Turning to the facts of this case, we note that
defendant had exercised only five of his twelve per-
emptory challenges at the completion of jury selec-
tion. We find, however, that *Russell* does not control
the outcome here for two reasons. First, the trial
court in the instant case did not correct its error so
as to afford defendant an opportunity to cure the
error. To the contrary, jury selection ended with the
trial court's denial of defendant's attempt to exercise
a peremptory challenge to the venireman at issue.
Furthermore, unlike defense counsel in *Russell*, coun-
sel here did not express his satisfaction with the jury.[2]

No waiver resulted from the fact that defendant did
not exercise his remaining peremptory challenges
because the trial court refused to allow defendant to
challenge the one venireman he wished to excuse.
The purpose of the appellate preservation of error
requirements is to induce litigants to do what they
can in the trial court to prevent error and eliminate
its prejudice, or to create a record of the error and its

---

[2] Although counsel said, "We have a jury," in the presence of the panel,
it is clear that these comments, like those withdrawing the peremptory
challenge, was a strategic decision to avoid alienation of the jurors. See
*Leslie v Allen-Bradley Co, Inc*, 203 Mich App 490, 493; 513 NW2d 179
(1994); *Goode, supra* at 786-787.

prejudice. *Taylor, supra* at 60. Under the circumstances presented here, requiring defendant to exercise a peremptory challenge for veniremen other than the one he wished to excuse would not further the goals of issue preservation. Accordingly, we conclude that defendant has sufficiently preserved his challenge to the trial court's method of permitting the exercise of peremptory challenges.

C

We now turn to the merits of defendant's claim. Without question, a criminal defendant has a constitutional right to be tried by a fair and impartial jury. US Const, Am VI; Const 1963, art 1, § 20; *People v Daoust*, 228 Mich App 1; 577 NW2d 179 (1998). There is, however, no constitutional right to exercise peremptory challenges. *Id.*; *People v Juarez*, 158 Mich App 66, 71; 404 NW2d 222 (1987). Nonetheless, peremptory challenges have long been an important tool for ensuring a fair trial, both in fact and in appearance. See *Georgia v McCollum*, 505 US 42, 57; 112 S Ct 2348; 120 L Ed 2d 33 (1992). We review de novo alleged violations of the jury selection process. *Daoust, supra.*

Michigan common law has long provided that peremptory challenges may be exercised at any time before the swearing of the jury. *People v Rich*, 237 Mich 481, 487; 212 NW 105 (1927); *In re Bennett Estate*, 51 Mich 71, 72; 16 NW 236 (1883); *Jhons v People*, 25 Mich 499 (1872). When jury selection procedures became a matter of court rule, this Court retained this view. See *Goode, supra* at 783-786. Presently, the court rule governing the exercise of per-

emptory challenges is MCR 2.511, which provides in pertinent part:

> (E) Peremptory challenges.
>
> *　　*　　*
>
> (3) Peremptory challenges must be exercised in the following manner:
>
> (a) First the plaintiff and then the defendant may exercise one or more peremptory challenges until each party successively waives further peremptory challenges or all the challenges have been exercised, at which point jury selection is complete.
>
> (b) A "pass" is not counted as a challenge but is a waiver of further challenge to the panel *as constituted at that time.*
>
> (c) If a party has exhausted all peremptory challenges and another party has remaining challenges, that party may continue to exercise his or her remaining peremptory challenges until they are exhausted.
>
> (F) Replacement of Challenged Jurors. After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge exercised, another juror must be selected and examined before further challenges are made. *This juror is subject to challenge as are other jurors.* [MCR 2.511 (emphasis added).]

The plain language of this rule is clear. If the composition of the panel is changed after a party passes a panel (either by challenges for cause or the exercise of peremptory challenge by another party), the party is free to exercise further peremptory challenges to any member of the new panel. Any other interpretation would ignore the phrase "as constituted at that time" and violate the principle that every word in a court rule should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible. See *Altman v Meridian Twp*, 439

Mich 623, 635; 487 NW2d 155 (1992); *People v Baker*, 215 Mich App 606, 610; 547 NW2d 62 (1996). It is not until both parties pass for peremptory challenges, and there has been no change in the makeup of the panel, that the party's pass may be deemed conclusive. Accordingly, we hold that the trial court erred in equating a pass of the panel as an acceptance of each venireman thereon.

D

This does not end our inquiry. The prosecutor urges this Court to find that any error in the jury selection procedure should be deemed harmless. Again, on the basis of controlling case law, we reluctantly disagree.

For over a hundred years the only remedy for the denial of the right to a peremptory challenge was automatic reversal; the aggrieved party did not need to show resultant prejudice. See, generally, *United States v Annigoni*, 96 F3d 1132 (CA 9, 1996) (on rehearing en banc), and cases cited therein. This Court has noted that the "failure . . . to honor the statutory right of peremptory challenge is error requiring reversal and of serious import." *Juarez*, supra at 72.

However, it is also well settled that automatic reversal for trial court error is not favored. To this end, MCR 2.613(A) provides:

> (A) Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

Similarly, MCL 769.26; MSA 28.1096 provides:

> No judgment or verdict shall be set aside or reversed or a
> new trial be granted by any court of this state in any crimi-
> nal case, on the ground of misdirection of the jury, or the
> improper admission or rejection of evidence, or for error as
> to any matter of pleading or procedure, unless in the opin-
> ion of the court, after an examination of the entire cause, it
> shall affirmatively appear that the error complained of has
> resulted in a miscarriage of justice.

Nothing in these rules excepts from their application
errors affecting peremptory challenges. However, we
find that to subject this issue to harmless-error analy-
sis would be to require this Court to do the
impossible.

Both this Court and our Supreme Court have held
that resultant prejudice from errors surrounding the
selection of juries is virtually impossible to demon-
strate. In *People v Miller*, 411 Mich 321, 326; 307
NW2d 335 (1981), our Supreme Court stated:

> [W]e agree with the Court of Appeals that there is noth-
> ing in this record from which one could affirmatively find
> prejudice to the defendants from the selection process.
> *However, given the fundamental nature of the right to trial
> by an impartial jury, and the inherent difficulty of evalu-
> ating such claims, a requirement that a defendant demon-
> strate prejudice would impose an often impossible burden.*
> See *People v Gratz*, 35 Mich App 42; 192 NW2d 304 (1971).
> *A defendant is entitled to have the jury selected as pro-
> vided by the rule.* [Emphasis added.]

The prosecutor posits that because the jury found
defendant guilty of the lesser offense of second-
degree murder, it necessarily accepted defendant's
defense of diminished capacity and that defendant

can ask for no more.[3] We disagree. The jury was also instructed regarding the lesser offenses of voluntary manslaughter, death of a person by discharging a firearm that was intentionally aimed at the person, and negligent use of a firearm. And, of course, the jury could have found defendant not guilty of any offense.[4]

Pursuant to the above-cited authority, we hold that it is impossible for this Court to find that the trial court's error was harmless.[5] Consequently, we reluctantly conclude that, under the circumstances presented here, reversal of defendant's convictions is required.

---

[3] The defense of diminished capacity is not a defense to general intent crimes such as second-degree murder. *People v Biggs*, 202 Mich App 450, 454; 509 NW2d 803 (1993).

[4] Appellate defense counsel acknowledged during oral argument that it was unlikely that the jury would have found defendant guilty of the lesser offense of voluntary manslaughter, primarily because of the temporal delay (several hours) between any provocation by Amedure and the shooting. However, we note the following comment made by this Court in *Gratz, supra* at 47:

To require a defendant, after conviction, to prove prejudice would be to impose on him an impossible burden of proof and, in effect, to deny enforcement of his statutory right. It would be virtually impossible in almost any case to demonstrate that prejudice resulted from the infringement of the right to have jurors selected in the manner prescribed by the statute.

*The defendant's guilt or innocence and the weight of the evidence are clearly beside the point. While jurors generally bring in a verdict portended by the weight of the evidence, experience teaches us that on occasion they bring in an unanticipated verdict to the dismay and mystification of both judge and counsel.* [Emphasis added.]

[5] As in *Miller, supra*, we found nothing in the record from which we could conclude that actual prejudice resulted from the jury selection process. Moreover, our review of the facts of this case as fully developed at trial, might have led us to conclude, were we the triers of fact, that defendant was indeed guilty of first-degree murder. However, our duty as dictated by controlling case law, requires us to correct the legal error under these circumstances by reversing defendant's convictions.

III

Defendant next argues that reversal is required because the trial court refused to read a cautionary instruction regarding a portion of the prosecutor's rebuttal argument. We agree with defendant that the following remark was an improper civic duty argument:

Now ladies and gentlemen, basically, if we talk in lay person's terms, there was nothing normal about a person that commits murder. Because that person decides to take human life. And we know that thou shalt not kill is pretty much a standard mores [sic] of our society. We all know that we can't cross that line. No matter how mad we get, we know that we can't cross that line. No matter how badly we don't want to be associated with somebody, we know we can't cross that line.

This defendant didn't want to be associated with homosexuals, and he crossed the line. *What's it going to be next? You don't want to be associated with somebody from a particular religious persuasion, so you kill that person? A particular race, so you kill that person? Where does it stop after this if a defendant is allowed to kill somebody because he doesn't want to be associated with a homosexual?*

Although we reverse defendant's convictions on other grounds, we note that prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jurors, and we caution prosecutors to refrain from making such arguments in the future. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

IV

Defendant next argues that the trial court's admission of certain evidence constitutes error requiring

reversal. Because this issue may arise on retrial, we will address it briefly.

We have examined the black and white photographs of the crime scene and the shotgun entrance wounds suffered by Amedure and find that their probative value regarding defendant's intent was not substantially outweighed by any danger of unfair prejudice. MRE 403. The mere fact that defendant did not contest the nature of the fatal wounds or the physical circumstances of the shooting does not render inadmissible evidence regarding these matters. *People v Mills*, 450 Mich 61, 71; 537 NW2d 909 (1995). We find no error in the trial court's admission of the challenged photographs.

The trial court did not abuse its discretion in permitting the medical examiner to use a white plaster mannequin to demonstrate the various wounds suffered by Amedure. *People v Castillo*, 230 Mich App 442; 584 NW2d 606 (1998); *People v Bailey*, 175 Mich App 743, 745; 438 NW2d 344 (1989). The three-dimensional model aided the jury in understanding testimony regarding the autopsy results and, ultimately, defendant's intent. The mannequin was clinical in nature, and any prejudice resulting from its demonstrative use did not substantially outweigh its probative value. MRE 403.

We also find no error in the trial court's decision to play a tape recording of eyewitness Gary Brady's 911 telephone call following the shooting. Although generally cumulative to Brady's in-court testimony, the tape recording is not unduly emotional, and we find no abuse of discretion in the trial court's balancing of the

probative value of the recording and its potential prejudice or cumulative nature.[6]

V

Defendant next challenges the denial of his motion to disqualify Oakland Circuit Judge Francis X. O'Brien from conducting his trial. This issue is moot. Judge O'Brien has retired from the circuit court bench, and thus a different judge will preside over defendant's retrial.

VI

Defendant's last allegation of error is that his sentence for the murder conviction violates the rule of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). Our reversal of defendant's convictions renders this issue moot. We note, however, that defendant's challenge to the scoring of Offense Variable 3 is not a cognizable appellate issue. *People v Raby*, 456 Mich 487, 497; 572 NW2d 644 (1998); *People v Mitchell*, 454 Mich 145, 176-178; 560 NW2d 600 (1997).

Reversed and remanded. We do not retain jurisdiction.

---

[6] Because we have concluded that no evidentiary errors occurred, we reject defendant's argument that the cumulative effect of these alleged errors requires reversal of his convictions. *Daoust, supra.*