# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 21, 2016

Plaintiff-Appellee,

v

No. 326141
Wayne Circuit Court

DARIUS LEWIS,

LC No. 14-008986-FC

Defendant-Appellant.

Before: M. J. KELLY, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of first-degree felony murder, MCL 750.316(1)(b), for which he was sentenced to life in prison. We affirm.

## I. LOWER COURT PROCEEDINGS

This case arises from the August 19, 2014 shooting death of Sa-Jad Al-Jabur. Originally, defendant and Doyle Mims were charged with first-degree felony murder, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Following the preliminary examination, defendant was bound over for trial on an amended charge of open murder, MCL 750.318, and felony-firearm. The district court dismissed the robbery charge. Mims was apparently bound over as charged. In December 2014, Mims pleaded guilty to second-degree murder in exchange for dismissal of the other charges. Defendant was tried alone before a jury.

The evidence showed that Mims had sold cell phones to the victim in the past. On the day of the offense, the victim arrived at the house where Mims was then living. Mims and defendant were sitting outside on the porch, apparently awaiting his arrival. Mims had a sealed box with a Verizon label on it. The box contained miscellaneous household items, but not cell phones. Mims's grandfather, Roger Collins, Jr., testified that defendant had a bulge in the front of his pants, which led Collins to believe he might be carrying a gun. When the victim arrived, defendant and Mims both went to meet him. Mims took the box and entered the front seat of the victim's car while defendant sat in the back. Suddenly, defendant pulled out a gun and shot the victim in the back of the head. Defendant and Mims fled the scene. Mims was later found in possession of a large amount of cash; the bills were blood-stained. It was defendant's theory at trial that Mims shot the victim and defendant was "merely present." The jury was instructed on premeditated murder, felony murder (predicated on robbery or larceny), and second-degree

-1-

murder on the open murder charge and on felony-firearm. It was also instructed on aiding and abetting. The jury found defendant guilty of felony murder and not guilty of felony-firearm.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that trial counsel was ineffective for failing to call Mims as a witness and for failing to introduce a written statement from Mims exculpating defendant. Defendant also contends that he is entitled to a new trial because he is actually innocent. The issues have not been preserved for appeal because defendant did not raise them in a motion for a new trial or request for an evidentiary hearing in the trial court. See *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014); *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Because the trial court did not conduct an evidentiary hearing and made no findings of fact, review of this issue is limited to mistakes apparent from the record. See *Lane*, 308 Mich App at 68. An unpreserved claim that a defendant is entitled to a new trial is reviewed for plain error affecting the defendant's substantial rights. *Musser*, 259 Mich App at 218.

The general rule is that effective assistance of counsel is presumed and "the defendant bears a heavy burden of proving otherwise." *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish ineffective assistance of counsel, the defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012).

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted). However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). Likewise, "[d]efense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). "A substantial defense is one that

might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

The record shows that Mims had implicated defendant in the crime in his police statement. Mims later wrote a statement in which he said that he wanted to "recant" because: the police pressured him into making a statement, the police "have the wrong person," and defendant is "innocent." There is nothing in the record to indicate that defendant's counsel was aware that Mims intended to recant and exculpate defendant. Although Mims's handwritten statement is dated October 24, 2014, it first appeared in the record in February 2015 and there is nothing in the record to indicate that counsel was aware of it before trial. But if counsel had been aware of it, he could not simply go and question Mims because Mims was a codefendant represented by independent counsel and there is nothing in the record to indicate that Mims and his lawyer would have consented to an interview. See MRPC 4.2.

Even assuming that Mims would have spoken to defendant's counsel, there is nothing in the record to indicate whether counsel did or did not talk to Mims or whether Mims indicated a willingness to testify for defendant. Defendant has thus produced an affidavit from Mims, who stated that he did want to testify for defendant. Apart from the fact that exculpatory postjudgment statements offered by a codefendant who declined to testify at trial are considered untrustworthy and unreliable, *People v Terrell*, 289 Mich App 553, 565-566; 797 NW2d 684 (2010), the affidavit is not part of the lower court record and cannot be considered because "it is impermissible to expand the record on appeal." *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009); *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). In any case, it shows only that Mims wanted to testify for defendant, not that he actually would have appeared and testified if called, much less that he advised defendant or his attorney of that fact.

Furthermore, Mims later recanted his intended recantation. Assuming that Mims had written his statement in October 2014, saying he wanted to recant his police statement inculpating defendant, he had clearly changed his mind by December 2014 when he pleaded guilty and admitted to aiding and abetting "one of my codefendants." Defendant was his only codefendant. There is nothing in the record to indicate that at any time between then and the time of trial, Mims had changed his mind again and decided that defendant was not involved or that he communicated that fact to defendant or defendant's attorney. Even if he had, Mims's proposed testimony could have been impeached with his prior statements inculpating defendant, placing Mims in the unenviable position of having to explain whether he perjured himself at the plea proceeding or whether he was perjuring himself at trial. Counsel may well have concluded that, under the circumstances, the jury was unlikely to give Mims's proposed testimony any credence, especially in light of the fact that another witness testified that he saw Mims on the porch with another man who gave his name as Lewis and later identified defendant as that man. Counsel's decision not to call Mims as a defense witness was objectively reasonable.

Defendant also argues that counsel was ineffective because he did not offer Mims's October 2014 statement into evidence as a statement against interest under MRE 804(b)(3). Even assuming that defense counsel was aware of the statement before trial and that Mims was "unavailable" rather than merely absent, see MRE 804(a)(5), defendant has not established that Mims's statement qualified for admission under that rule.

MRE 804(b) provides in part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> \* \* \*

> (3) *Statement Against Interest*. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

When, as here, the statement is offered by a defendant to exculpate himself, four criteria must be met for the statement to be admissible: (1) the declarant is unavailable to testify, (2) the statement is against the declarant's penal interest, (3) a reasonable person in the declarant's position would have believed the statement to be true, and (4) corroborating circumstances clearly indicate the statement is trustworthy. *People v Barrera*, 451 Mich 261, 268; 547 NW2d 280 (1996). The second criterion requires that the statement tended to subject the declarant to liability and thus "includes a broad scope of inculpatory statements." *Id.* at 270. Although it "need not by itself prove the declarant guilty," it "must actually assert the declarant's own culpability to some degree—it cannot be a statement merely exculpating the accused." *Id.* at 271.

Mims provided the following information in his statement: (1) "the police have the wrong person" and defendant is innocent, (2) Mims knows defendant is innocent because he saw "the actual shooter" and that person "is much taller" than defendant and "skinny," (3) Mims implicated defendant because the police "pressured" him and he regretted it, (4) Collins's identification of defendant was untrustworthy because Collins never saw defendant, was under the influence of heroin, and the identification was based on a photograph of a person Mims did not recognize, and (5) nobody made any threats or promises to induce his statement. This does not qualify as a statement against interest. While it indicates that Mims was present and witnessed the crime because he claimed to have seen "the actual shooter," it in no way suggests that Mims was involved in the crime to any extent. Because the statement exculpates defendant but does not inculpate Mims, it does not satisfy the second *Barrera* criterion and thus was not admissible under MRE 804(b)(3). Therefore, counsel was not ineffective for failing to seek its introduction into evidence.

Defendant lastly contends that he is entitled to a new trial because he is actually innocent. The trial court may grant a new trial "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). A defendant's actual innocence would satisfy this standard. Cf. *People v Bencheck*, 360 Mich 430, 433; 104 NW2d 191 (1960) (a claim of innocence that is not obviously frivolous supports withdrawal of a guilty plea before sentencing). The defendant must present "compelling evidence of innocence." Cf. *People v Shanes*, 155 Mich App 423, 428; 399 NW2d

73 (1986) (addressing actual innocence as a reason for withdrawal of a guilty plea). The only evidence of innocence is defendant's claim that he was not involved in the crime and Mims's repeated inconsistent statements regarding defendant's involvement. This hardly qualifies as "compelling evidence." Therefore, defendant has not shown a plain error.

## III. JURY SELECTION

Defendant next argues that he is entitled to a new trial because the trial court prematurely terminated jury selection without affording him an opportunity to exercise all of his peremptory challenges. Although defense counsel's objection to this procedure was belated, we will treat the objection as sufficient to preserve this issue. Because a defendant only has "a statutory or court-rule-based right to exclude a certain number of jurors" rather than a constitutional right to do so, the issue is not constitutional in nature. *People v Bell*, 473 Mich 275, 293-295 (CORRIGAN, J.), 301-303 (TAYLOR, C.J., concurring); 702 NW2d 128, amended 474 Mich 1201 (2005).

Because defendant was tried alone for a life offense, he and the prosecutor were each entitled to 12 peremptory challenges. MCL 768.13(1) and (2); MCR 6.412(E)(1). Once a prospective jury has been seated and one or more peremptory challenges are exercised, "another juror or other jurors must be selected and examined. Such jurors are subject to challenge as are previously seated jurors." MCR 2.511(G). In this case, 14 prospective jurors were selected from the venire. Following voir dire, the trial court excused one juror for cause, the prosecutor exercised one peremptory challenge, the defense exercised two peremptory challenges, and four new prospective jurors were called. After further voir dire, both parties passed for cause, the prosecutor passed on peremptory challenges, and the defense exercised one peremptory challenge. Rather than select a replacement and continue with voir dire, the trial court stated that the case would proceed with the 13 remaining jurors. We agree that the trial court erred in terminating jury selection as it did. See *People v Schmitz*, 231 Mich App 521, 529-530; 586 NW2d 766 (1998), abrogated in part on other grounds by *Bell*, 473 Mich at 293-295 (CORRIGAN, J.), 301-303 (TAYLOR, C.J., concurring). However, the error does not warrant automatic reversal and is subject to harmless error review for a miscarriage of justice. *Id*. at 295; see also MCR 2.613(A).

We are unable to discern any prejudice to defendant resulting from the trial court's decision. At the time the trial court terminated jury selection, defendant did not have any challenges for cause and the composition of the jury did not change after defendant had exercised his last peremptory challenge. Defendant did not actually express any dissatisfaction with the jury that was seated or request any relief in the trial court. Even on appeal, defendant has not identified any facts to indicate that the jury that was seated was not fair and impartial. While defendant points to the fact that one juror knew the judge from high school, he does not claim that that association affected the juror's impartiality or even that he would have excused her had he known of the association. Accordingly, because defendant has not shown a miscarriage of justice, the error was harmless.

## IV. ADMISSION OF EVIDENCE

Defendant also argues that the trial court erred in admitting three autopsy photographs showing the victim's gunshot wounds. We review the trial court's decision to admit the photos

for an abuse of discretion. *People v Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998). The "trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007) (footnote omitted).

Evidence is admissible if it is relevant. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The photographs were relevant. Although defendant did not dispute that the victim was deceased and apparently did not dispute that he was murdered, he did not stipulate that the crime amounted to first-degree premeditated murder or second-degree murder.[1] The photographs were thus relevant to the issue of intent because they showed the location, nature, and extent of the wounds, *People v Mills*, 450 Mich 61, 71; 537 NW2d 909, modified 450 Mich 1212 (1995), and the intent of the actor "was directly in issue because it was an essential element of premeditated murder and felony murder." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). The photographs were also admissible to corroborate the medical examiner's testimony. See *Mills*, 450 Mich at 76. Relevant photographs are not rendered inadmissible "simply because a witness can orally testify about the information contained in the photographs," *id.*, or because the "defendant did not contest the nature of the fatal wounds or the physical circumstances of the [killing]." *Schmitz*, 231 Mich App at 534.

Even if relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. "While gruesome photographs should not be admitted solely to garner sympathy from the jury, a photograph that is admissible for some other purpose is not rendered inadmissible because of its gruesome details." *People v Mesik* (*On Reconsideration*), 285 Mich App 535, 544; 775 NW2d 857 (2009). Rather, "[t]he proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Mills*, 450 Mich at 76.

Evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Instead, "unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit[.]" *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984). Generally, evidence is unfairly prejudicial if there is "a danger that marginally probative evidence will be given undue or preemptive weight by the jury," *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998), if it would lead the jury to decide the case on an improper basis such as emotion, *People v Meadows*, 175 Mich App 355, 361; 437 NW2d 405 (1989), or if "it would be inequitable to allow use of the evidence," *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

---

[1] "[F]elony murder is essentially second-degree murder, elevated by one of the felonies enumerated in MCL 750.316." *People v Maynor*, 256 Mich App 238, 243-244; 662 NW2d 468 (2003).

The trial court found that the photographs were "gory" to an extent because they showed a dead person with injuries to his head, but they were not "exceptionally gory" because they showed clean wounds rather than "dripping blood." The trial court's assessment is not clearly erroneous. In fact, on first glance, it is not readily apparent that the wounds to the victim's cheeks were actually gunshot wounds. Because the photographs were relevant and were not so gruesome as to divert the jury's attention from the actual issues in the case, the trial court did not abuse its discretion in admitting the photographs.

## V. DEFENDANT'S STANDARD 4 BRIEF

Finally, defendant argues in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that the prosecution failed to present sufficient evidence to support his conviction of first-degree murder. A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). This Court must review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Circumstantial evidence and reasonable inferences drawn therefrom are sufficient to prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). All conflicts in the evidence are to be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

We note that defendant challenges the sufficiency of the evidence only as it relates to first-degree premeditated murder, a charge of which he was acquitted. Defendant mistakenly asserts that the charge of first-degree felony murder was dismissed at the preliminary examination. Regardless, defendant's argument is not directed at the essential elements of premeditated murder or felony murder. He instead argues that the evidence was insufficient to establish his guilt of any murder because Mims was the gunman and Mims falsely implicated defendant in the offense. This argument is directed at defendant's identity as a perpetrator of felony murder.

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, the identity of a defendant as the perpetrator of an offense must be proved beyond a reasonable doubt for a jury to convict. *Id*. The prosecutor presented sufficient evidence from which the jury could find that defendant shot the victim. Collins testified to seeing defendant with what appeared to be a gun before entering the car and to producing and firing a gun while in the car. Although he was impeached with a prior statement in which he stated that the victim responded affirmatively to the question whether "Doyle and them" shot him and even may have said, "Doyle, yeah," it was up to the jury to determine whether defendant or Mims was the gunman. But if Mims had been the gunman, the evidence showed that he and defendant were acting in concert and thus defendant could be convicted as an aider and abettor, even if he did not actually fire the gun that killed the victim. MCL 767.39; *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). As for Mims's written

statement and affidavit, they were not part of the evidence adduced at trial and are thus irrelevant to a claim regarding the sufficiency of the evidence.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly