*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
October 6, 2022

v

No. 356475
Bay Circuit Court
LC No. 16-010850-FC

RODRICK DEVONTE WILLIAMS,

        Defendant-Appellant.

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b),[1] larceny in a building, MCL 750.360, armed robbery, MCL 750.529, and carjacking, MCL 750.529a. Following a *Miller*[2] hearing, the trial court sentenced defendant, a 16-year-old juvenile at the time of the charged offenses, to prison terms of 35 to 60 years for the murder conviction, 32 to 48 months for the larceny conviction, and 20 to 30 years each for the armed robbery and carjacking convictions, to be served concurrently. We affirm.

Defendant's convictions arise from the November 22, 2016 violent and gruesome killing of 58-year-old Steven Bouza during a robbery at his home in Bay City. Defendant, a 16-year-old juvenile, committed the offenses with 20-year-old Demarckeon Jackson, who also was charged in the matter. Jackson testified at trial pursuant to a plea agreement whereby he pleaded guilty of second-degree murder and armed robbery, and received a 35-year minimum sentence. Jackson had known the victim for approximately four years and visited him a few times a week. Jackson had known defendant for approximately two years before the offenses and regarded him as a "brother."

---

[1] The jury also found defendant guilty of second-degree murder, MCL 750.317, but on the prosecutor's motion, that conviction was vacated and "merged" with the felony-murder conviction for purpose of sentencing.

[2] *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

Jackson testified that on November 22, 2016, defendant asked him whether the victim was wealthy and indicated that he planned to rob the victim. Jackson and defendant went to the victim's home to visit him. A neighbor, Alkareei Franklin, was also with the victim. According to Jackson, after Franklin left, defendant grabbed the victim from behind and choked him until he was unconscious. Defendant then obtained some kitchen knives and repeatedly stabbed the victim. Afterward, defendant and Jackson stole several items from the victim's house and also took the victim's two vehicles, a Cadillac and a GMC pickup truck. According to Jackson, the two returned the next day and set the victim's house on fire with the victim's body still inside. Fire investigators discovered the victim's badly burned body inside the house.

The pathologist testified that the victim sustained 12 stab wounds to his heart and both lungs. The victim was deceased before his body was burned. Surveillance video from a 7-11 store on the night of the murder showed Jackson and defendant exiting the victim's Cadillac. Several items of the victim's property were found at locations where defendant resided, and a key to the victim's pickup truck was found inside a backpack that contained other items with defendant's name on them. Defendant's and Jackson's fingerprints were also found on a box inside the trunk of the victim's Cadillac. DNA samples from some of the victim's clothing items and from the steering wheel of the Cadillac were consistent with Jackson's DNA profile.

The jury found defendant guilty of first-degree felony murder, second-degree murder, larceny in a building, armed robbery, and carjacking. The prosecutor filed a motion requesting that defendant, although a 16-year-old juvenile when the crimes were committed, be sentenced to life imprisonment without parole for his first-degree murder conviction. Following a *Miller* hearing, the trial court denied the prosecutor's motion and later sentenced defendant to a term-of-years sentence of 35 to 60 years for the murder conviction. Defendant now appeals, raising issues in both a brief filed by appointed appellate counsel and in a pro se Standard 4 brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").

Defendant first seeks relief on the ground that he has attention deficit hyperactivity disorder (ADHD), but was not provided with medication for this condition during his incarceration before or during trial. Defendant concedes that he never raised this issue in the trial court. Therefore, this issue is unpreserved. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). As such, we review this for plain error (i.e., a clear or obvious error), affecting defendant's substantial rights. *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004); *People v Posey*, 334 Mich App 338, 346; 964 NW2d 862 (2020). A clear or obvious error is "one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted). Reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (citation omitted).

Preliminarily, although some of defendant's arguments appear to suggest that defendant was not "present" for trial, there is no dispute that defendant was physically present during the proceedings. The principal thrust of defendant's argument is that he was unable to meaningfully participate in his own defense because he was denied his ADHD medication during the pendency of the proceedings. This Court has held that a defendant's constitutional right to the effective assistance of counsel includes the right to assist in his own defense. *People v Sterling*, 154 Mich

App 223, 232; 397 NW2d 182 (1986). We agree with plaintiff that defendant's argument is akin to a claim that he was not competent to stand trial because he did not have his ADHD medication.

A defendant is presumed competent to stand trial, and must present evidence to the contrary in order to obtain relief on this ground. MCL 330.2020(1) provides:

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

In this case, defendant has presented nothing to indicate that he ever claimed before or during trial that he lacked the ability to participate in his defense, or otherwise was not competent to stand trial, because he had been denied his ADHD medication. Initially, defendant's argument hinges on his claim that he was deprived of his ADHD medication, but he has not provided any evidence that he was prescribed the medication, nor that he requested such medication and his request was denied. Indeed, defendant has not submitted an affidavit averring that he requested medication for an ADHD condition. He also failed to submit an affidavit from trial counsel indicating whether she was aware of defendant's ADHD condition, and whether she either failed to request that defendant be administered his medication or requested the medication for him and her request was denied. There is also no indication from trial counsel suggesting that she felt defendant was incapable of assisting her during trial. As noted by plaintiff, defendant elected not to testify at trial after questioning by the trial court. Defendant does not identify anything in this exchange, or in the remaining trial transcripts, that suggests that he had difficulty concentrating or participating in his defense. Moreover, nothing has been presented to show how the defense would have been strengthened or different if this alleged "deprivation" had not occurred.

In his reply brief, defendant argues that he was not required submit an affidavit in support of his contention that others refused to provide him with his ADHD medication. He maintains that the statement of his appellate attorney is a satisfactory "offer of proof" under MCR 7.211. MCR 7.211(C)(1)(a)(1) states that a motion to remand "must be supported by affidavit or other offer of proof regarding the facts to be established at a hearing." However, even if an affidavit is not necessary, appellate counsel's unsworn statement does not qualify as a competent "offer of proof." "An offer of proof is '[a] presentation of evidence for the record.' " *People v Ybarra*, 493 Mich 862; 820 NW2d 908 (2012) (ZAHRA, J., concurring), quoting *Black's Law Dictionary* (7th ed).[3] See also *People v Lucas*, 393 Mich 522, 528; 227 NW2d 763 (1975) ("Evidence

---

[3] *Black's Law Dictionary* (9th ed) states:

> An offer of proof . . . consists of three parts: (1) the evidence itself, (2) an explanation of the purpose for which it is offered (its relevance), and (3) an argument supporting admissibility. Such an offer may include tangible evidence or

substantiating incompetency-infact (sic) must establish that there is a violation of rights before a new trial will be ordered.").

In the instant case, appellate counsel's "offer of proof" simply restates the claims she makes in her appellate brief and motion to remand. It states only that defendant "did not receive" any ADHD medication while incarcerated. Notably, appellate counsel does not claim to have personal knowledge whether defendant was prescribed ADHD medication, was deprived of his ADHD medication before or during trial, and counsel does not reference tangible evidence or specific statements from defendant or trial counsel. In addition, this alleged "offer of proof" does not support defendant's contention that he was "deprived" of ADHD medication by the prosecution, jail personnel, or the trial court. Indeed, it does not directly address the obvious question whether defendant had a valid prescription or ever requested any ADHD medication. The alleged offer of proof also states that trial counsel "has acknowledged that there was no strategic reason for her failure to [object to the fact that defendant had been denied medication]." Again, however, defendant fails to present even an unsworn statement from trial counsel in support of this bare assertion. The statement from appellate counsel does not comport with MCR 7.211(C)(1)(a)(i).

Furthermore, defendant's "offer of proof" only indicates that defendant did not receive his ADHD medication before or during trial. Significantly, assuming he had a valid prescription, it provides no basis for concluding that the absence of this medication affected defendant's competency to stand trial, either because he was unable to understand the nature and object of the proceedings against him or because he was unable to meaningfully participate in his defense. Defendant has not otherwise provided factual support for a finding that either of these conditions existed. Considering that a defendant is presumed competent to stand trial, and that plain-error review requires defendant to demonstrate a clear and obvious error (i.e., one not subject to reasonable dispute), it necessarily follows that to be entitled to appellate relief, defendant must be able to identify something in the record that clearly and obviously demonstrates either that he was unable to understand the nature and object of the proceedings against him or that he was unable to meaningfully participate in his defense because he was deprived of his ADHD medication. Defendant has not made this necessary showing. Thus, defendant has not satisfied his burden of showing a plain error with respect to this issue.

Defendant next argues that his 35-year minimum sentence for first-degree murder is disproportionate to the seriousness of the offense and the offender. We disagree.

An appellate court reviews a sentence for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "Resentencing will be required when a sentence is determined to be unreasonable." *Id.* When reviewing a sentence for reasonableness, this Court must review "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed

---

testimony (through questions and answers, a lawyer's narrative description, or an affidavit).

by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

The default sentence for a conviction of first-degree felony murder is life in prison without the possibility of parole. MCL 750.316. Thus, the Legislature has indicated that a life-without-parole sentence will generally be considered proportionate to the seriousness of an offense involving felony murder. Therefore, a term-of-years sentence, which necessarily is less severe than a life-without-parole sentence for first-degree murder, should be regarded as presumptively proportionate. However, in *Miller v Alabama*, 567 US 460, 472; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court recognized that the attributes of youth diminished the penological justifications for imposing mandatory life-without-parole sentences on juvenile offenders. In *People v Skinner*, 502 Mich 89, 114-115; 917 NW2d 292 (2018), our Supreme Court, quoting *Miller*, 567 US at 477-478, identified the following factors, set forth in *Miller*, that a trial court should consider in deciding whether to impose a life-without-parole sentence on a juvenile offender:

> The following are the factors listed in *Miller*: (1) "his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation . . . ."

"It is undisputed that all of these factors are mitigating factors," and are factors "that 'counsel against irrevocably sentencing [juveniles] to a lifetime in prison.' " *Skinner*, 502 Mich at 115, quoting *Miller*, 567 US at 480. These factors recognize that there is a difference between the crime of a juvenile offender that demonstrate the juvenile's transient immaturity and the crime of the "rare juvenile offender whose crime reflects irreparable corruption." *Miller*, 567 US at 479-480. Under *Miller*, trial courts are required to consider how children are different and how those differences weigh against irrevocably sentencing them to life imprisonment without parole. *Id*. at 480.

In response to the *Miller* decision, the Michigan Legislature enacted MCL 769.25a. Under MCL 769.25a(4)(c), if a trial court does not to impose a life-without-parole sentence on a juvenile offender, it must sentence the defendant to a term of years, with a minimum sentence of not less than 25 years or more than 40 years, and a maximum term of 60 years. Thus, for a juvenile offender, defendant's minimum sentence of 35 years for first-degree murder should be deemed presumptively proportionate. Defendant has not overcome the presumptive proportionality of his sentence.

Defendant's argument is principally predicated on the observation that he received the same 35-year minimum sentence that codefendant Jackson received, despite the fact that Jackson

was an adult offender, who allegedly exerted influence over defendant and knew the victim. Defendant also notes that he has a limited education and untreated ADHD. These latter factors were considered by the trial court as part of its decision to deny the prosecutor's motion to impose a life-without-parole sentence, and instead sentence defendant to a term of years. However, they do not demonstrate that defendant's term-of-years sentence is disproportionate. Moreover, as plaintiff argues, the trial court was not required to tailor defendant's sentence in light of codefendant Jackson's sentence. See *In re Jenkins*, 438 Mich 364, 376; 475 NW2d 279 (1991) ("there is no requirement that the court consider the sentence given to a coparticipant"). In any event, defendant overlooks significant differences between him and codefendant Jackson that undermine his argument that he should have received a lesser sentence. Most significantly, unlike defendant, Jackson was not convicted of first-degree murder. He pleaded guilty of second-degree murder pursuant to a plea agreement. Further, although defendant attempts to portray Jackson as the more culpable offender because he was a 20-year-old adult offender at the time of the offense, the evidence at trial indicated that it was defendant who formulated the plan to rob the victim and who actually killed the victim by choking him until he became unconscious and then repeatedly stabbing him in the chest. The trial court was permitted to consider this evidence in evaluating the seriousness of defendant's role in the commission of the offenses. Moreover, the trial court conducted an extensive *Miller* hearing and determined that a term-of-years sentence was more proportionate than a sentence of life without parole, so defendant cannot reasonably claim that the court did not review all of the available information in order to fashion an individualized sentence for defendant.

In sum, defendant has not demonstrated that his term-of-years sentence for first-degree murder is disproportionate to the seriousness of the offense and the offender.

Defendant next argues that the automatic-waiver statute, MCL 600.606, which permitted him to be prosecuted as an adult for crimes he committed as a 16-year-old juvenile, is unconstitutional.[4] Therefore, defendant argues, it was improper to prosecute him as an adult offender. We disagree.

Preliminarily, we note that this issue is unpreserved because defendant never challenged the constitutionality of the automatic-waiver statute in the trial court. *Grant*, 445 Mich at 546. Therefore, we review this issue for plain error (i.e., a clear or obvious error), affecting defendant's substantial rights. *McNally*, 470 Mich at 5; *Posey*, 334 Mich App at 346. In this case, defendant cannot establish any error, plain or otherwise.

As defendant acknowledges, in *People v Hana*, 443 Mich 202; 504 NW2d 166 (1993), the Michigan Supreme Court expressly held that the automatic-waiver statute, MCL 600.606, is constitutional. Although defendant argues that *Hana* should be "revisited" in light of the United States Supreme Court's decision in *Miller*, this Court is required to follow *Hana* until the Michigan Supreme Court modifies or overrules its decision. *Mahaffey v Attorney General*, 222 Mich App 325, 339; 564 NW2d 104 (1997). In any event, we do not believe that *Miller* undermines our Supreme Court's decision in *Hana*. In *Miller*, the Court did not hold, or even imply, that charging juveniles as adults is unconstitutional. Indeed, *Miller* does not prohibit a juvenile from being

---

[4] Defendant also raises this issue in his Standard 4 brief.

charged or sentenced as an adult. It only prohibits the imposition of a mandatory life-without-parole sentence against a juvenile offender. No such sentence was imposed in this case. Instead, defendant was sentenced to a term of years, after a hearing as prescribed by *Miller*. Accordingly, we reject this claim of error.

Defendant also raises claims of ineffective assistance of counsel. Because defendant did not raise these claims in an appropriate motion in the trial court, and this Court denied his motion to remand, our review of this issue is limited to errors apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Whether a defendant has been deprived of the effective assistance of counsel is a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). To establish ineffective assistance of counsel, defendant must show that: (1) counsel's representation "fell below an objective standard of reasonableness," and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001)(citations omitted).

Defendant first argues that defense counsel was ineffective because she failed to object to the fact that defendant was deprived of his ADHD medication before and during trial. As discussed earlier, however, defendant has not presented factual support for his claim that he was prescribed the medication, nor that he requested such medication and it was denied. Nor has he submitted an affidavit from trial counsel indicating whether she was aware of defendant's ADHD condition, and whether she either failed to request that defendant be administered such medication or requested the medication for him and her request was denied. Thus, defendant has failed to establish the factual predicate for this related claim of ineffective assistance.

Defendant also argues that counsel was ineffective for failing to argue that the automatic-waiver statute is unconstitutional. However, because the Michigan Supreme Court has already considered and rejected that argument, and because *Miller* does not hold, or imply, that it is impermissible for juvenile offenders to be tried as adults, counsel's failure to raise this issue was not objectively unreasonable. "[D]efense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument." *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996)(citations omitted). Moreover, because the trial court would have been bound to follow our Supreme Court's decision in *Hana*, upholding the constitutionality of the automatic-waiver statute, defendant cannot demonstrate that he was prejudiced by counsel's failure to raise this argument.

In his Standard 4 brief, defendant summarily asserts that defense counsel was unprepared for trial and failed to object to the prosecutor's statements. Defendant is correct that a defense attorney can be found ineffective if the attorney fails to adequately investigate and prepare for trial. See *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). In this case, however, defendant has not factually demonstrated that counsel was unprepared for trial. Although he summarily asserts that counsel "didn't know any of the DNA stuff or what questions to ask," he fails to explain

why he believes counsel did not understand the DNA evidence or indicate what questions counsel failed to ask. Similarly, defendant complains that counsel "barely objected to anything the prosecutor said," but he does not identify any conduct by the prosecutor that he believes was improper or what objection counsel should have made. Defendant cannot "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). Accordingly, defendant's unspecified ineffective-assistance claims must be deemed abandoned. *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019)(citation omitted). Defendant's failure to establish the factual predicate for his ineffective-assistance claims also precludes appellate relief. *Carbin*, 463 Mich at 600.

In his Standard 4 brief, defendant also generally complains about the ethnic makeup of his jury. The legal basis for his claim is unclear. In any event, we conclude that any claim of error was waived. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). "Where a party fails to object to the method of jury selection at trial, he has waived the issue on appeal." *People v Schmitz*, 231 Mich App 521, 526; 586 NW2d 766 (1998), abrogated on other grounds by *People v Bell*, 473 Mich 275, 292-293; 702 NW2d 128 (2005). Also, "[a]n expression of satisfaction with a jury made at the close of voir dire examination waives a party's ability to challenge the composition of the jury thereafter impaneled and sworn." *People v Hubbard (After Remand)*, 217 Mich App 459, 466; 552 NW2d 493 (1996), overruled on other grounds by *People v Harris*, 495 Mich 120, 139; 845 NW2d 477 (2014). In the instant case, defendant never objected to the racial or ethnic composition of the jury venire and, at the close of jury selection, defense counsel told the court, "Your Honor, we are satisfied with the jury." Because counsel expressed satisfaction with the jury that was seated, and defendant never earlier challenged the composition of the jury venire, this claim of error has been waived.

Even if this issue was not waived, however, defendant would not be entitled to appellate relief. As noted, the legal basis for defendant's claim is unclear. "The Sixth Amendment of the United States Constitution guarantees a defendant the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). To establish a prima facie violation of the fair-cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community;
> (2) that the representation of this group in venires from which juries are selected is
> not fair and reasonable in relation to the number of such persons in the community;
> and (3) that this underrepresentation is due to systematic exclusion of the group in
> the jury-selection process. [*Id*. at 597 (quotation marks and citations omitted).]

It is also well established that a prosecutor is not permitted to exercise a peremptory challenge to remove a prospective juror solely on the basis of the juror's race. *Batson v Kentucky*, 476 US 79, 96-98; 106 S Ct 1712; 90 L Ed 2d 69 (1986). "To establish a prima facie case of discrimination based on race, the opponent must show that: (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of

the challenge excluded the prospective juror on the basis of race." *People v Knight*, 473 Mich 324, 336; 701 NW2d 715 (2005).

In this case, defendant has not provided any information to factually support either a violation of the fair-cross-section requirement or a *Batson* violation involving the discriminatory use of peremptory challenges. With respect to the former, he does not provide any information regarding the makeup of either the jury pool or the empaneled jury. Moreover, the record does not contain, and defendant does not provide, any information about the representation of other members of defendant's ethnicity in venires in Bay County, the percentage of such persons in Bay County, or the systematic manner in which jurors are selected in Bay County. With respect to any *Batson* claim, defendant does not indicate the ethnic makeup of his jury or provide any information regarding jurors who were peremptorily excused. A review of the trial court's confidential "jury box" file reveals only the names of the seated jurors, not their race or ethnicity. Thus, defendant has failed to establish the predicate facts necessary to obtain relief on the ground that the empaneled jury lacked racial diversity.

Defendant also seeks relief on the ground that the trial testimony of codefendant Jackson was unreliable because he gave conflicting accounts of what happened during the offense. However, defendant does not identify any specific testimony that he believes was inadmissible, or that he objected to at trial. Given his failure to provide any meaningful analysis in support of this claim of error, the issue may be considered abandoned. *Johnson*, 329 Mich App at 126. Even if we consider the issue, however, defendant would not be entitled to appellate relief.

Because defendant has not demonstrated that any challenge to codefendant Jackson's testimony was preserved with an appropriate objection at trial, review of this issue is limited to plain error affecting defendant's substantial rights. *McNally*, 470 Mich at 5; *Posey*, 334 Mich App at 346. Defendant does not assert that any testimony by codefendant Jackson was substantively inadmissible. He only asserts that Jackson's testimony was unreliable because he gave inconsistent accounts of what happened. Any conflicts in Jackson's accounts would only affect his credibility. It is well-settled that issues of credibility are for the jury to resolve. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). A jury is free to believe all, none, or part of a witness's testimony. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Thus, inconsistent witness testimony does not render evidence insufficient because such issues are for the jury to resolve in determining the credibility of the witnesses. *People v Smith*, 205 Mich App 69, 72 n 1; 517 NW2d 255 (1994). Accordingly, defendant cannot demonstrate that any inconsistencies in Jackson's accounts affect either the admissibility of his testimony or the sufficiency of the evidence at trial. Therefore, he cannot demonstrate a plain error affecting his substantial rights.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ Michelle M. Rick